Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TERESITA C. RIERA CARRIÓN<br><br>Apelante<br><br>v.<br><br>JUAN C. ALBORS LAHONGRAIS<br><br>Apelado | KLAN202300611 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.<br>K DI2008-1277<br><br>Sobre:<br>Divorcio<br>Trato Cruel |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Grana Martínez y la Jueza Santiago Calderón[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

I.

Tras decretarse disuelto el matrimonio entre la Sra. Teresita Riera Carrión y el Sr. Juan Carlos Albors Lahongrais, en mayo del 2014 el Tribunal de Primera Instancia estableció una pensión alimentaria a favor de sus tres (3) hijos. Posteriormente, en junio del 2016, el señor Albors Lahongrais solicitó una modificación en la pensión alimentaria de dos (2) de sus hijos.

Ante la dificultad de llegar a un acuerdo sobre la modificación de la pensión alimentaria y luego de que el Foro primario celebrara varias vistas, las partes plantearon la posibilidad de llegar a un acuerdo transaccional. A esos efectos, durante una vista celebrada el 10 de octubre de 2018, la Examinadora de Pensiones Alimenticias (EPA) les solicitó que presentaran por escrito su posible acuerdo transaccional. Presentada la estipulación alcanzada por las partes, la señora Riera Carrión expresó que había sido engañada dolosamente sobre varios asuntos relacionados a la pensión alimentaria.

---

[1] Véase Orden Adm. OAJP-2021-086 de 4 de noviembre de 2021.

Evaluados los planteamientos de las partes, el Foro primario emitió *Resolución* y declaró "No Ha Lugar" la petición de la señora Riera Carrión para que se anulara la estipulación de pensión alimentaria suscrita por las partes. A su vez, el Tribunal de Primera Instancia acogió el alegado acuerdo ofrecido. De dicha *Resolución*, la señora Riera Carrión recurrió ante nuestra consideración. Atendido su recurso, el 7 de julio de 2022 emitimos *Sentencia* --KLAN202200108--. En dicha ocasión concluimos que:

> "[L]as partes sí llegaron a un **preacuerdo** el día de la vista ante la EPA, que fue libre y voluntario, sin embargo, no fue formalizado por las partes, ni la EPA realizó ninguna recomendación al foro primario para que lo evaluara y lo acogiera mediante sentencia. Resulta meritorio mencionar que, en convenios relacionados con pensiones alimentarias, el Tribunal deberá asegurarse que lo acordado por los padres no sea dañino para los menores. No surge del expediente que el Tribunal evaluara si lo acordado por las partes satisfacía adecuadamente las necesidades de los hijos. Por consiguiente, no habiendo un acuerdo suscrito y acogido por el foro primario entorno a la pensión alimentaria de los hijos habido entre las partes, procede devolver el caso para la continuación del procedimiento de revisión de pensión de alimentos ante la EPA".

El 14 de diciembre de 2022, transcrita el 23 de enero de 2023, la EPA emitió por escrito el *Informe de la Examinadora de Pensiones Alimenticias*. Allí sostuvo que, el 14 de diciembre de 2022, se había celebrado una Conferencia sobre el estado de los procedimientos, según el mandato emitido por el Tribunal de Apelaciones. Además, estableció que, las partes habían estado de acuerdo en que procedía la revisión de la pensión alimenticia por cambios sustanciales. Sin embargo, tanto la señora Riera Carrión como el señor Albors Lahongrais mantenían interpretaciones encontradas sobre la determinación del Foro Apelativo. Por lo cual, la EPA concluyó referir el asunto al tribunal para que determinara el curso a seguir en cuanto al proceso se revisión pendiente. Finalmente, la EPA coordinó fechas para comenzar el proceso de revisión.

El 24 de enero de 2023, el Tribunal de Primera Instancia emitió *Orden* y consignó que, no existiendo una estipulación formal de pensión alimentaria, procedía referir el caso a la EPA para que emitiera su recomendación y posteriormente el tribunal la evaluara. A esos efectos, el 24 de marzo de 2023, la EPA rindió un segundo *Informe de la Examinadora de Pensiones Alimenticias*. Según dicho *Informe,* habiendo estado las partes asistidas de abogado al momento del acuerdo informado y ratificado por las partes el 10 de octubre de 2018, este se recomendaba por ser a favor de los menores. En cuanto al monto de la pensión básica, se recomendó una reducción a $2,544.58 mensuales por haber al momento solo un menor de edad.

El 23 de mayo de 2023, el Tribunal de Primera Instancia emitió *Resolución* acogiendo el *Informe* de la EPA con sus recomendaciones sobre el alegado acuerdo que habían llegado las partes el 1 de noviembre de 2018. Insatisfecha, el 9 de junio de 2023, la señora Riera Carrión instó *Moción de Reconsideración.* Arguyó que, lo que existía entre las partes era un preacuerdo. Además, sostuvo que, ante ello, la EPA no estaba en posición de atender aún el asunto.

El 12 de junio de 2023, notificada el 13, el Foro *a quo* emitió *Orden* declarando "No Ha Lugar" la *Moción de Reconsideración.* Inconforme aún, el 13 de julio de 2023, la señora Riera Carrión acudió ante nos mediante *Recurso de Apelación.* Plantea:

> **ERRÓ EL TPI AL DICTAR UNA RESOLUCIÓN ACOGIENDO UNA PROPUESTA DE UNA PARTE COMO PENSIÓN ALIMENTARIA SIN CELEBRACIÓN DE VISTA, EN CRASO INCUMPLIMIENTO CON LA SENTENCIA DICTADA POR ESTE HONORABLE FORO, POR LO QUE LA RESOLUCIÓN DEL TPI ES CONTRARIA A DERECHO Y ES UN ABUSO DE LA DISCRECIÓN DEL FORO PRIMARIO.**

Por su parte, el 11 de agosto de 2023, el señor Albors Lahongrais presentó ante nuestra consideración escrito intitulado

*Alegato.* Señala que, el Tribunal de Primera Instancia se limitó a seguir las directrices de este Honorable Tribunal, pues, una vez devuelto el caso, la EPA evaluó el preacuerdo de las partes, preparó su informe y recomendó la pensión alimentaria. Así considerado, el Foro primario no había errado al emitir la *Resolución* acogiendo el informe de la EPA en el mejor bienestar de los menores.

Con el beneficio de la comparecencia de las partes y el Derecho, procedemos a resolver.

II.

En Puerto Rico la obligación de los padres de proveer para los alimentos de sus hijos menores está revestida del más alto interés público.[2] Dicha obligación, corolario del derecho a la vida garantizado por el Artículo II, Secs. 1 y 7, de la Constitución del Estado Libre Asociado de Puerto Rico, se funda en principios universalmente reconocidos de solidaridad humana, asociados al derecho natural a la vida e imperativos de los vínculos familiares.[3]

El derecho de los hijos no emancipados a recibir alimentos de sus progenitores está expresamente estatuido en los artículos 658 y 590 del Código Civil de 2020.[4] El concepto de alimentos que viene obligado a proveer un alimentante incluye todo aquello que sea indispensable para el sustento, habitación, vestido, recreación y asistencia médica de una persona, según la posición social de la familia.[5] También incluye la educación de los alimentistas mientras sean menores de edad e, inclusive, hasta que terminen alguna

---

[2] *Franco Resto* v. *Rivera Aponte,* 187 DPR 137 (2012); *Fonseca Zayas* v. *Rodríguez Meléndez,* 180 DPR 623, 632 (2011); *Ferrer* v. *González,* 162 DPR 172, 177 (2004); *Martínez* v. *Rodríguez,* 160 DPR 145, 150 (2003); *Figueroa Robledo* v. *Rivera Rosa,* 149 DPR 565, 572 (1999); *Soto Cabral* v. *E.L.A.,* 138 DPR 298, 322 (1995); 8 LPRA § 502.

[3] *Maldonado* v. *Cruz,* 161 DPR 1, 13 (2004); *Argüello* v. *Argüello,* 155 DPR 62, 69 (2001); *Chévere Mouriño* v. *Levis Goldstein,* 152 DPR 492, 498 (2000); *Rodríguez Avilés* v. *Rodríguez Beruff,* 117 DPR 616, 621 (1986).

[4] 31 LPRA § 7541 y §7242.

[5] Íd., § 7531; *McConnell* v. *Palau,* 161 DPR 734, 745-746 (2004); *Argüello,* 155 DPR, pág. 70; *Chévere,* 152 DPR, pág. 501; *Mundo* v. *Cervoni,* 115 DPR 422, 426 (1984).

carrera iniciada en ese periodo.[6] Además, las atenciones de previsión acomodado a los usos y las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales.[7] Incluye además la partida por concepto de honorarios de abogado en una acción para reclamar alimentos y los gastos del litigio.[8]

La cuantía de los alimentos se fija de forma proporcionada, no sólo a las necesidades del alimentista, sino también a los recursos que el alimentante tiene a su disposición.[9] En este sentido, el Art. 671 del Código Civil de 2020, establece que: "[l]a cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos del obligado".[10] Según este principio de proporcionalidad, se considerarán los recursos del obligado y la posición social de la familia, así como también el estilo de vida que lleva el alimentante.[11] De igual modo, al determinar la cuantía de una pensión alimenticia se deben considerar aspectos tales como el estilo de vida del alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso.[12] La modificación periódica de las pensiones de los menores de edad se rige por legislación especial complementaria,[13] en este caso, la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada.[14] Los mecanismos que

---

[6] *Argüello*, 155 DPR, pág. 70; *Key Nieves* v. *Oyola Nieves*, 116 DPR 261, 266 (1985).
[7] 31 LPRA § 7532.
[8] Íd., § 7534; *Guadalupe Viera* v. *Morell*, 115 DPR 4 (1983) [Fue revocado por fundamentos no pertinentes a nuestra discusión].
[9] *Chévere*, 152 DPR, pág. 534; *Rodríguez*, 117 DPR, pág. 621.
[10] 31 LPRA § 7567.
[11] *Fonseca*, 180 DPR, pág. 632.
[12] *Ferrer*, 162 DPR, págs. 179-180; *Argüello*, 155 DPR, págs. 72-73; *Chévere*, 152 DPR, págs. 502-504; *Rodríguez Rosado* v. *Zayas Martínez*, 133 DPR 406, 412 (1993); *López* v. *Rodríguez*, 121 DPR 23, 33 (1988).
[13] 31 LPRA § 7567.
[14] 8 LPRA § 501 *et seq.*

esta normativa establece tienen una naturaleza inherentemente forzosa, pues van dirigidos principalmente a quienes no responden con sus obligaciones alimentarias o para lograr adjudicar pensiones cuando existe una disputa sobre la cantidad que los obligados deben aportar.[15]

Por otro lado, la Ley Núm. 5, autoriza la adopción de guías para determinar y modificar las pensiones alimentarias de los menores de edad.[16] En virtud de ello, la *Administración para el Sustento de Menores* adoptó el Reglamento Núm. 8529 de 30 de octubre de 2014,[17] que establece las guías mandatorias correspondientes para la fijación de pensiones alimentarias en nuestra jurisdicción. Así, a través de un descubrimiento de prueba amplio y compulsorio sobre la situación económica de las partes, las Guías permiten establecer de manera uniforme y equitativa la aportación monetaria de cada parte mediante criterios numéricos y descriptivos que toman en consideración los ingresos de los obligados y las necesidades de los menores.[18]

La cuantía de la pensión debe ser determinada, en primera instancia, utilizando dichas guías. No obstante, si el tribunal determina que la aplicación de las guías resultaría en una pensión alimentaria injusta o inadecuada, así lo hará constar en su resolución y procederá a determinar la pensión alimentaria luego de considerar, entre otros, los siguientes factores: (1) los recursos económicos de los padres y del menor; (2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales; (3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta; (4) las consecuencias

---

[15] *De León Ramos* v. *Navarro Acevedo*, 195 DPR 157, 176 (2016).

[16] 8 LPRA § 518.

[17] Enmendado por el Reglamento Núm. 8564 a fin de corregir errores clericales o tipográficos.

[18] *De León*, 195 DPR, pág. 170, *Santiago, Maisonet* v. *Maisonet Correa*, 187 DPR 550, 564 (2016).

contributivas para las partes, cuando ello sea práctico y pertinente; y (5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor.

El Art. 13 de la Ley Núm. 5, dispone además la creación de un procedimiento expedito, ello con el fin de reducir el tiempo de tramitación del proceso judicial de fijación o modificación de pensiones alimentarias.[19] Provee para la designación por parte del Juez Presidente del Tribunal Supremo de un número de examinadores, adscritos a la Sala Superior del Tribunal de Primera Instancia, para presidir las vistas sobre pensiones alimentarias.[20] Éstos tienen a su vez la facultad expresa para hacer determinaciones de hechos y conclusiones de derecho y recomendar remedios al Juez en casos de alimentos y filiación.[21] Así, le corresponde a éstos conducir los procedimientos judiciales para el descubrimiento de prueba sobre la situación económica del alimentante y alimentista.[22] Una vez el Examinador de Pensiones Alimentarias somete al Tribunal sus determinaciones de hechos, sus conclusiones de derecho y su recomendación sobre el monto de la pensión, éste puede acogerlas o hacer las suyas propias, con o sin vista previa y emitir la orden, resolución o sentencia que corresponda.[23]

Por otro lado, como norma general un Tribunal debe aceptar los convenios y estipulaciones a las que lleguen las partes. Sin embargo, el examen de las estipulaciones por el tribunal cobra mayor relevancia cuando se relaciona con la pensión de un menor. En estos casos, el Tribunal debe asegurarse de que el convenio no es dañino para el menor porque satisface adecuadamente sus necesidades, así como que el alimentante tiene medios económicos

---

[19] 8 LPRA § 512.
[20] Íd.
[21] Íd.
[22] Íd., § 515.
[23] Íd., § 517 (5); *Caro* v. *Cardona*, 158 DPR 592, 603-604 (2003). Énfasis nuestro.

suficientes para cumplir.[24] Es por ello que, a diferencia de otras estipulaciones a las que lleguen las partes, los acuerdos de alimentos no constituyen cosa juzgada y están sujetos a revisión.[25] Así considerado, la pensión alimentaria (acordada por las partes y aceptada por el tribunal mediante estipulación) puede ser alterada cuando existe un cambio sustancial en las circunstancias que originaron el convenio.[26]

III.

En el presente caso, la señora Riera Carrión sostiene que erró el Foro primario al emitir una *Resolución* acogiendo la pensión alimentaria recomendada por la EPA a base del preacuerdo informado en octubre de 2018. Le asiste razón. Veamos por qué.

Como relacionamos previamente, mediante la *Sentencia* que emitimos el 7 de julio de 2022, concluimos que entre las partes solamente existía un preacuerdo. Así considerado, devolvimos el caso al Tribunal de Primera Instancia para que continuara los procedimientos. Una vez recibido el mandato, el **24 de enero de 2023**, el Foro primario le ordenó a la EPA que emitiera sus recomendaciones. Sin embargo, el **14 de diciembre de 2022**, la EPA celebró una Conferencia sobre el Estado de los Procedimientos en el que **ambas partes habían estado de acuerdo en que al momento existían cambios sustanciales en las circunstancias del caso que requerían la revisión de la pensión alimenticia**. Ante tales circunstancias, la EPA coordinó varias fechas para comenzar un nuevo proceso de revisión.

No obstante, tras la *Orden* del 24 de enero de 2023, la EPA realizó un nuevo *Informe*. Allí, formuló sus recomendaciones **a base**

---

[24] *Negrón Rivera y Bonilla, Ex parte*, 120 DPR 61 (1987). Véase, además, Guías para Uniformar el Procedimiento de Divorcio por Consentimiento Mutuo, Conferencia Judicial de Puerto Rico, mayo 1988, pág. 32.
[25] *Pesquera Fuentes* v. *Colón Molina*, 202 DPR 93 (2019); *McConnell* v. *Palau*, 161 DPR 734 (2004).
[26] *Negrón Rivera y Bonilla, Ex parte*, 120 DPR 61 (1987).

**del preacuerdo realizado en el 2018**. Posteriormente y de nuevo sin celebrar vista, el Foro primario emitió *Resolución* acogiendo totalmente las recomendaciones de la EPA. Si bien es cierto que, una vez la EPA emite sus recomendaciones, el Tribunal de Primera Instancia puede acogerlas con o sin la celebración de una vista previa y emitir resolución, en este caso existen circunstancias que ameritaban auscultar la situación económica de las partes y la necesidad del menor en la actualidad.

El Foro primario no podía descansar en el preacuerdo que las partes habían llegado hace cinco (5) años. De la propia *Resolución* se desprende que no va acorde con la realidad. De las constancias del expediente se destaca al menos, que, al presente, dos de los tres hijos advinieron a la mayoría de edad y el que aún es menor, comenzó sus estudios universitarios. Más aún, las partes coincidieron en comenzar un nuevo proceso de revisión. Ante ello, no podía el Foro primario utilizar un preacuerdo que había perdido su valor. En su lugar, debió continuar el proceso de revisión en el mejor bienestar del menor. Al actuar en contravención de lo antes mencionado, erró el Tribunal de Primera Instancia.

IV.

Por los fundamentos antes expuestos, se *revoca* la *Sentencia* apelada. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Grana Martínez emite por escrito Voto Disidente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TERESITA C. RIERA CARRIÓN<br><br>Apelante<br><br>v.<br><br>JUAN C. ALBORS LAHONGRAIS<br><br>Apelado | KLAN202300611 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.<br>K DI2008-1277<br><br>Sobre:<br>Divorcio<br>Trato Cruel |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Grana Martínez y la Jueza Santiago Calderón[1]

## VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

La Regla 52.1 de Procedimiento Civil aprobada y adoptada por el Tribunal Supremo de Puerto Rico según recomendación del Comité Asesor Permanente de las Reglas de Procedimiento Civil en el 2009 disponía:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia, sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

*In re Aprobación Rs. Proc. Civil*, 176 DPR 673, 804 (2009). (Énfasis nuestro).

---

[1] Véase la Orden Adm. OAJP-2021-086 de 4 de noviembre de 2021.

La intención de la normativa era circunscribir la revisión de las resoluciones u órdenes interlocutorias solamente a cuando se recurriese de una resolución u orden relacionada a remedios provisionales, injunction o la denegatoria de una moción de carácter dispositivo. El objetivo era permitir que los procesos ante los foros de primera instancia transcurrieran sin dilaciones innecesarias sobre asuntos que se podrían corregir en la marcha ante el propio foro o eventualmente en un recurso apelativo.

La Regla sufrió enmiendas ante la consideración de la Legislatura, quien eventualmente aprobó el Proyecto de Reglas de Procedimiento Civil, enmendando algunas de estas. Específicamente, en cuanto a la Regla 52.1 se amplió el alcance previsto por el Tribunal Supremo para añadir, por excepción, la revisión de órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurriese de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia.[2]

En la discusión sobre la enmienda propuesta por la Legislatura a la Regla 52.1, según adoptada por el Tribunal Supremo, reconocía el entonces Juez Presidente del Tribunal Supremo de Puerto Rico, Federico Hernández Denton que, "como parte del esfuerzo para agilizar la adjudicación de los procesos civiles, la Regla 52.1 reduce las situaciones en que se pueden expedir autos de certiorari para revisar órdenes y resoluciones interlocutorias, limitándose a resoluciones dispositivas." Expresaba, además, que las limitaciones que se proponían disminuían la práctica de solicitar revisión de órdenes y resoluciones que no adelantaban el proceso, sino que más bien lo prolongaban y creaban

---

[2] Ley 220-2009.

dilaciones injustificadas en los pleitos ordinarios. Con acierto, el ex juez del Tribunal de Primera Instancia y Vicepresidente de Comité Asesor Permanente de Reglas de Procedimiento Civil, Héctor J. Conty Pérez, expresaba que "[a]ctualmente los calendarios de los jueces y juezas están supeditados a que una parte recurra al Tribunal de Apelaciones para revisar cualquier orden o resolución dictada en el caso, ya sea temprano en el pleito, durante o hasta en pleno juicio. Este mecanismo dilatorio es el arma más efectiva que puede tener una parte para cansar a otra que no tenga los recursos suficientes para mantenerse litigando en un pleito perennemente.[3]

Las limitaciones propuestas a la regla respondían a la necesidad de agilizar los procesos judiciales. Sin embargo, durante la discusión del proyecto, las Comisiones Legislativas propusieron enmendar la regla para ampliar su aplicación y permitir las apelaciones de resoluciones interlocutorias, en ciertos casos por excepción. Así también, poco tiempo después, nuevamente, la Legislatura se insertó en la discusión de la reglamentación procesal civil ante los tribunales y aprobó la Ley 177-2010, para enmendar la Regla 52.1 y ampliar aún más el alcance de la revisión de órdenes o resoluciones, en esta ocasión, a aquellas que revistan de interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Finalmente, la Regla 52.1 de Procedimiento Civil hoy dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos

---

[3] Informe Positivo sobre el P. de la C. 2249, 11 de noviembre de 2009.

esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
32 LPRA Ap. V.

Por lo tanto, aun cuando la Regla 52.1 de Procedimiento Civil se enmendó para ampliar el ámbito de revisión de resoluciones u órdenes interlocutorias, no podemos perder de perspectiva que el objetivo primordial de la enmienda a las Reglas de Procedimiento Civil de 1979 era agilizar los procedimientos judiciales.[4]

La razón de ser de la enmienda a las reglas es particularmente importante a la luz de que cada norma tiene un propósito basado en un principio general de derecho que la inspira, una razón de ser, un objetivo particular, una política pública que la subyace a la mera literalidad. La eficiencia y funcionalidad del sistema requiere que los jueces no solo apreciemos la norma en su sentido literal, sino que también auscultemos su propósito para que la interpretación y aplicación a nivel judicial sea cónsona con sus delineamientos.[5]

Ciertamente, estamos ante una resolución interlocutoria en un caso de familia. A mi entender, correctamente el foro primario hizo el arduo ejercicio de aplicar la resolución de este tribunal en el KLAN202200108. Producto de dicha resolución, a mi pesar, un tanto confusa, la peticionaria interpretó que este tribunal les encomendó a obviar el acuerdo estipulado por las partes en la vista de 10 de octubre de 2018, el recurrido interpretó que habíamos compelido a formalizar el acuerdo y el foro recurrido concluyó que nuestro llamado era a auscultar, si previo a la formalización del acuerdo, analizar si este beneficiaba a los menores. En aquel

---

[4] Véase, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2nda edición, USA, Publicaciones JTS, 2011, Tomo I, pág. 11.

[5] E. Rivera García, *Compendio sobre el sistema acusatorio; reflexiones sobre el debido proceso legal y la protección a los derechos fundamentales en el sistema acusatorio*, Publicaciones Gaviota, págs. 17-18.

entonces, la frase "la continuación de los procedimientos de conformidad con lo aquí resuelto", encontró una variedad de interpretaciones que, lejos de agilizar los procesos, sirvieron para alargar y complicar los mismos. No puedo avalar tal curso nuevamente, no creo prudente continuar guiando los procesos ante el foro recurrido. En mi opinión, no existen los criterios que deban motivar nuestra intervención, una vez más, en este asunto. Si las circunstancias cambiaron, debido al tiempo que le ha tomado a este foro la solución de la controversia que se nos presentó, corresponde a las partes plantearlo ante el foro primario, a este atenderlo de manera definitiva y entonces podrá ser revisado ante este tribunal. Solo así garantizaremos el objetivo de la norma, en un área de derecho para la cual es trascendental que los procesos judiciales funcionen rápidamente. Por tal razón, denegaría la expedición del recurso.

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones